THE TEXAS LAND AND MORTGAGE COMPANY v. W. B. WORSHAM ET AL.

No. 80.

**Injunction — Sales Under Execution, when Restrained.**—Where a judgment was rendered foreclosing a vendor's lien on land, which the plaintiff therein assigned, and afterwards released the lien of record, and the assignee (though paid the amount he paid for the judgment) had execution issued, and the land advertised for sale: *Held*, the judgment and execution being valid on their face, such as would require parol evidence to show their invalidity, the sale thereunder would cast such a cloud upon the title of the true owner of the land as a court of equity should interfere to prevent. Injunction perpetuated, and judgment cancelled. Following Carlin v. Hudson, 12 Texas, 202.

APPEAL from Gonzales. Tried below before Hon. GEORGE MCCORMICK.

*Harwood & Harwood* and *Thomas McNeal*, for appellant.—Should the sheriff of Clay County be permitted to proceed under the judgment of the District Court of Gonzales County, foreclosing the vendor's lien on the land in controversy in Clay County, and directing the sheriff to place a purchaser at such a sale in possession of the land, a purchaser at said sale would acquire the apparent legal title to the land in controversy, and plaintiff's equitable defenses would not prevail against such a purchaser. Slaughter v. Owen, 66 Texas, 668; Mann v. Wallis, Landes & Co., 75 Texas, 611; Van Ratcliff v. Call, 72 Texas, 492; Hardy v. Broaddus, 35 Texas, 668; Cool. on Tax., 542, 543.

*Ireland, Burgess & Dibrell*, for appellees.—Appellant had an adequate remedy at law, and was not entitled to relief from a court of equity by granting an injunction to restrain appellees' sale of the land in Clay County. Cameron v. White, 3 Texas, 152; Henderson v. Morrill, 12 Texas, 1; Carlin v. Hudson, 12 Texas, 202; Purinton v. Davis, 66 Texas,

456; Whitman v. Willis, 51 Texas, 427; Duck v. Peeler, 74 Texas, 270; Spencer v. Rosenthal, 58 Texas, 4; Mann v. Wallis, Landes & Co., 75 Texas, 611; Wilcox v. Walker, 7 S. W. Rep., 115; Wingfield v. McClure, 3 S. W. Rep., 439.

. NEILL, ASSOCIATE JUSTICE.—This is a suit brought by appellant to enjoin the appellees, W. B. Worsham and G. C. Wright, the sheriff of Clay County, from the sale of lands lying in Clay County, under an order of sale issued from the District Court of Gonzales County on a judgment rendered in said court on January 9, 1886, in favor of T. M. Harwood, against A. L. Butler, for $1315.17, with a foreclosure of a vendor's lien on said land, and directing it sold in satisfaction of said judgment. The injunction was prayed for upon the ground that the judgment had been satisfied, and that a sale of the land in pursuance of said order would cast a cloud upon appellant's title to the same.

The complainant in its bill prayed for a perpetual injunction restraining the sale, and for a cancellation of said judgment. The facts upon which complainant relied for equitable relief will be found in our conclusions of fact. A temporary writ of injunction was granted, which, upon a final hearing before the court without a jury, was dissolved, and the case dismissed, from which decree this appeal is prosecuted.

*Conclusions of Fact.*—From an examination of the statement of facts contained in the record, we find the conclusions of fact of the court below correct, and here adopt them as our own. They are as follows, viz.:

1. This suit was brought to restrain the sale of lands lying in Clay County, which had been advertised by the sheriff of Clay County, under an order of sale issued from the District Court of Gonzales County, on a judgment of said court rendered in the case of T. M. Marwood v. A. L. Butler, January 9, 1886, foreclosing a vendor's lien on said land, directing that the land be sold to satisfy a purchase money note, which, with interest, amounted at the date of the judgment to the sum of $1315.17. The order of sale under which the land was advertised to be sold, and which is here sought to be restrained by injunction, was issued in the name of W. B. Worsham, assignee of T. M. Harwood, on the 26th day of October, 1888.

2. That prior to this, to-wit, on April 6, 1886, Harwood had assigned a first order of sale to J. W. T. Gray, receiving therefor the full amount due on his judgment, and transferred the judgment to said Gray on the back of the order of sale, and at the same time executed to Gray a written transfer of the judgment on another sheet of paper.

3. That afterwards, to-wit, on September 12, 1888, Gray transferred in writing, on the back of the original order of sale, and under the endorsement of Harwood to him, by quitclaim, for a recited valuable con-

sideration, all his right, title, and interest to the judgment in question to W. B. Worsham, the defendant herein, and at the same time executed a formal written transfer of all his right, title, and interest in said judgment on a separate paper, which was acknowledged for record, to the said W. B. Worsham.

4. That it was after this transfer that Worsham procured the second order of sale, and had the same placed in the hands of the sheriff, who advertised the land for sale, and was proceeding to execute it, when the injunction in this case was granted by Judge Aldridge of the Dallas District, November 27, 1888, and the sale prevented.

5. That the Henrietta National Bank furnished the money to Butler to pay the Harwood judgment, and that Gray was the cashier of that bank, and the transfer of the judgment was made to him as a trustee for the bank. That Butler had procured Worsham to agree verbally to become his surety to the bank for the money advanced by it to pay off said judgment, and that the transfer to Gray was for the purpose of first protecting the bank until the note of Butler was paid, and secondly, if Worsham paid it, then to protect him in such payment, the note being executed by Butler alone to the bank; Worsham not being present when the transaction took place, but was represented in the transaction by his agent, W. B. Stickney.

6. That W. B. Stickney, Esq., was at the time, and all during the transactions connected with this judgment and the settlement of the matters of Butler with the Henrietta Land and Cattle Company and W. B. Worsham, the confidential agent and adviser of the parties, and acted for Worsham and Butler at the time the bank loaned the money to pay Harwood.

7. That from the testimony showing the transactions between Butler, Worsham, the Henrietta Land and Cattle Company, and the Henrietta National Bank, that W. B. Worsham, the defendant herein, paid the said bank the money it had loaned the said Butler to pay T. M. Harwood for the judgment when Butler's note became due, May 6, 1886, according to his verbal promise to the bank; and that afterwards Butler, or the Henrietta Land and Cattle Company, of which he was president, and which, after its incorporation, had title to the lands in suit, subject to the vendor's liens and judgments, paid back to said Worsham the said money during the multitude of transactions which seem to have taken place between them, and that Wellesley, the agent of the plaintiff, had been so informed by Stickney, the agent of Worsham, and acted upon said information as if it were true in advancing money on said land as security.

8. That the land in question was conveyed by deed from Harwood to Butler, which was regularly recorded in Clay County, in which the vendor's lien was reserved to secure the payment of two notes representing the balance of the purchase money. The first of said notes had been paid

by Butler before the suit to foreclose the second had been filed in Gonzales County. And it is further found, that at the time of this suit there was nothing of record in Clay County showing that either of the notes mentioned in said deed had been paid, or of the judgment in Gonzales County foreclosing the vendor's lien on the land based on the nonpayment of the last note, except a release from T. M. Harwood, dated December 8, 1886, recorded December 13, 1886, acknowledging the payment of the notes and giving to Butler a quitclaim for all his right, title, and interest by virtue of his vendor's lien, in which nothing is said of the judgment in Gonzales.

9. That on March 1, 1884, A. L. Butler conveyed an undivided three-fourths interest in said land in suit to J. H. Butler, W. D. Butler, and B. F. Denson; and on December 3, 1884, the said A. L., J. H., and W. D. Butler and B. F. Denson conveyed the said tracts in suit, in connection with a large body of other lands owned by them, to the Henrietta Land and Cattle Company, a Texas corporation, of which grantors were the stockholders, and W. D. Butler president, by which transaction the said Henrietta Land and Cattle Company became the owner of the lands in suit, subject to the vendor's lien in favor of Harwood. That on the 30th day of June, 1886, the said Henrietta Land and Cattle Company conveyed the said lands in controversy to C. E. Wellesley, as trustee for the plaintiff, the Texas Land and Mortgage Company, Limited, to secure a loan of $10,000, which was to be a first lien on the land in suit and a second lien on other lands already mortgaged to plaintiffs. That afterwards, to-wit, on July 1, 1887, the said Henrietta Land and Cattle Company having made default in payment of the said note, sale was made under said trust deed in accordance with its terms, at which sale the Texas Land and Mortgage Company, Limited, became the purchasers of said lands covered by said trust deed, and the trustee executed a deed to the same, which, as was the case in all the other conveyances recited and found in this finding, was immediately after its date filed for record in Clay County, and it, together with the deeds and deed of trust aforesaid, were and are regularly recorded immediately after the date of each. It is further found, that the said Texas Land and Mortgage Company, the plaintiff, was in possession of said land when the injunction in this case was sued out, and is now in such possession.

*Conclusions of Law.*—A sale of land under judicial process which will confer no title, and the effect of which will be to cloud the title of others, should be enjoined. But no generally accepted test, applicable to all cases, as to what will constitute such a cloud upon title as to authorize the interference for its prevention by a court of equity has ever been established, at least in this State. Elsewhere the test seems to be, where a sale, if made, would create a title under which the purchaser could in

ejectment recover against the true owner, unless the latter placed his own title in evidence, or by some other means established the invalidity of the purchaser's title, then such is a cloud on the title of the true owner. And in accordance with this test, it has been held in other States, that if an execution against a person who had once been the owner of the property be levied upon it, and it be no longer liable to levy and sale under such execution, the present owner of the property may, in equity, prevent his title being clouded by such sale. But if the title to be created by a sale is such that its invalidity can be determined from inspection, or that the true owner need offer no evidence to protect himself from it, then it is not a cloud on his title, and the sale will not be enjoined. See note and authorities cited to Carlin v. Hudson, 62 Am. Dec., 524.

In Carlin v. Hudson, 12 Texas, 202, it was held, that an injunction would not be granted to restrain a sale on execution of land which the judgment debtor has conveyed to the party applying for the writ, for the reason that it was not indispensable to secure him in the enjoyment of his property, or preserve his title to it, or to prevent gross and irremediable injustice in respect to such property; and that the proposed sale of the land as the property of complainant's vendor could not operate to dispossess the plaintiff, or deprive him of its enjoyment, or defeat his title, or embarass him in the prosecution of his legal remedies for any injury to his title or possession. This decision has ever since been followed by our Supreme Court.

In cases where the property sought to be sold under execution against the husband was a homestead, or had been dedicated as such, our courts have exercised their equitable jurisdiction at the instance of the wife, and sometimes at the instance of the husband, to restrain the sale, upon the ground that it would be a cloud upon title. In such cases, the title to the property at the time of the levy being in the name of the husband, a sale of it under execution against him would apparently vest title in the purchaser at execution sale, and it would require extrinsic evidence under such sale, which is the true principle upon which the equitable jurisdiction of courts of chancery rests, to prevent a cloud from being cast upon title to real property. And it is confined to instances where the proceeding complained of appears to be valid on its face, but is in fact void or invalid for some reason or another which can only be shown by extrinsic evidence.

As every person must be presumed to know the law, a proceeding which upon its face is not only illegal, but absolutely void, does not constitute a cloud upon the title to real estate against which a court of equity will relieve. And when a valid legal objection appears upon the face of the proceedings through which the adverse party claims any right to the complainant's land, it is not in law such a cloud upon his title as will authorize a court of equity to interfere; for it is well and truly said,

"That can never be considered a legal cloud which can not for a moment obstruct the unaided rays of legal science where they are brought to bear upon the supposed obscurity."

It must be borne in mind that a cloud upon one's title is the wrong that equity interposes to prevent. A cloud upon a title, though not apparently so, is always inferior to the title itself, and the holder of the real title can always, in the courts of this State, in an action of trespass to try title, brought either by himself or the party clouding his title, by the introduction of the extrinsic evidence which shows the apparent title to be only a cloud, defeat it, and maintain his right to the property by virtue of the real title. And if the fact that he can thus defeat his adversary claiming under the cloud, and maintain the right to his property by virtue of his title, should be regarded as the test of his right to maintain an action to prevent a cloud being cast upon it, the very *test* of *his* right to maintain the action would demonstrate that such right did not exist, and prove that the equitable jurisdiction exercised by courts of chancery to prevent clouds from being cast upon titles does not obtain in this State. Such, then, can not be the test, nor be regarded as such a remedy at law as defeats the right to obtain the equitable relief. This legal remedy is essentially different, and applies to a different subject. The equitable one is to prevent the cloud from being cast, which, if done, will force the owner of the property to defend his title in an action at law, and compel the introduction on his part of extrinsic evidence to enable him to maintain his defense.

Without attempting to lay down a test as to what in this State constitutes cloud upon title, we think it safe to say, that an encumbrance valid upon its face, which can only be impeached by proof of extrinsic facts, and the evidence on which the right or superior title of the complainant depends is not of record, nor shown in the papers through which the right depends, is such an encumbrance, and constitutes such a cloud upon title, in this State, as will be removed or prevented by a court of equity.

In this case there was a record of the deed from T. M. Harwood to A. L. Butler in Clay County, which showed the reservation of a vendor's lien to secure the notes given for the purchase money of the land. A judgment was rendered by the District Court of Gonzales County in January, 1886, against Butler in favor of Harwood, for $1315.12, on one of said vendor's lien notes, in which judgment the vendor's lien was foreclosed, and the clerk directed to issue an order to sell the land in satisfaction of such judgment; and it was ordered in the judgment, that when the officer executing said order sold the land and executed his deed for the same to the purchaser, he should put him in possession of it. There was a regular chain of transfers of this judgment from Harwood to the appellee, W. B. Worsham, of which Butler had actual notice, and they

were filed with the papers in the case in the office of the district clerk of Gonzales County, and showed that Worsham had authority to control the judgment.

The order of sale under which the land was advertised for sale, and which was sought to be restrained by the injunction in this case, was issued upon the judgment by the clerk of the court, in the name of W. B. Worsham, assignee of T. M. Harwood. It is hardly necessary to say, that if the sheriff had made the sale in pursuance of said writ, that his deed made to the purchaser by virtue of it would have been an encumbrance, valid upon its face, such as would apparently vest the purchaser with title superior to Butler's or his vendees', and it would have required proof of extrinsic facts to show that the title acquired under such deed was not superior to the title of Butler or that held under him.

The appellant claimed the property through a regular chain of conveyances from Butler down to it; and the fact that it is superior to such a title as might be acquired by one purchasing the property at a sale made by virtue of the order of sale sought to be enjoined, arises from the fact that the judgment upon which the order issued had been paid off and discharged prior to the issuance of such order. Proof of the payment of the judgment does not appear in any way from the record or papers in the case wherein it was rendered.

An examination of such record shows apparently a valid and subsisting judgment, owned and controlled by the appellee Worsham in this cause. The question then is, does the record of the release executed by Harwood on December 18, 1886, to A. L. Butler, of the vendor's lien retained in his deed to Butler, show that the title of appellant, acquired through Butler, is superior to such a title as would be acquired by a purchaser under the order of sale sought to be enjoined? This vendor's lien, at the time the release was executed, had merged in the judgment which had been assigned by Harwood to Gray, and by Gray to W. B. Worsham, with the full knowledge of Butler, prior to the time the release was executed. The release makes no reference whatever to the judgment, but simply recites the payment of the vendor's lien notes, and shows that it is made in consideration therefor. The presumption arising from said release is, that the payment of the notes was made by Butler to Harwood, and no inference can be drawn therefrom that the payment was made to Worsham. If as a matter of fact, as the presumption is from the release, the payment of the notes had been made by Butler to Harwood instead of to Worsham, such payment would not operate as a discharge of the judgment, and Worsham would be fully authorized in having an order of sale issued on it and the property sold in its satisfaction. For by the assignment of a judgment the whole right passes to the assignee, and the defendant becomes the debtor of the assignee; and after notice to the debtor, the

assignee will be protected from all acts of the parties. 2 Freem. on Judg., secs. 425, 426.

It is a very serious question in our mind, if the land had been sold by virtue of the order of sale sought to be enjoined, if the purchaser, without other evidence of the discharge of the judgment than what appears from the release of the vendor's lien, would not have acquired a superior title to that of the appellant. If he could be defeated in such title by the appellant, it would have to be done by proof of the extrinsic facts and evidence upon which appellant's superior title depends, that is not of record nor shown in the papers through which his superior right depends. This evidence is the payment of the money secured by the judgment to Worsham by Butler or the Henrietta Land and Cattle Company, in the multitudinous transactions that occurred between them, and rests entirely upon parol testimony. If for some reason such a payment could not be established, as it was on the trial of this case, in an action between the appellant and a purchaser at the sale sought to be enjoined, such purchaser would prevail in the action, and defeat the superior right of the appellant. Besides, the proposed sale, the judgment requiring the officer making it to put the purchaser in possession, might "operate to dispossess the complainant, or deprive him of its enjoyment," etc.; thus bringing the case within the rule of Carlin v. Hudson, which would entitle it to the injunction.

We conclude, therefore, that the court below erred in its conclusion of law in holding that "the plaintiff had such an adequate remedy at law as would prevent it from applying to a court of equity for relief by injunction to restrain the sale."

The judgment of the District Court is reversed, and judgment is here rendered in favor of appellant, perpetuating the injunction and cancelling the judgment of the District Court of Gonzales County rendered in favor of T. M. Harwood against A. L. Butler.

*Reversed and rendered.*

Delivered November 15, 1893.

Justice FLY did not sit in this case.

Motion for rehearing refused.